TEXTO COMPLETO DE LA SENTENCIA
La recurrente Finca Cojobas, Inc., nos solicita que revisemos y revoquemos una Resolución dictada el 2 de noviembre de 2006 por la Secretaría de Procedimiento Adjudicativo del Departamento de Hacienda, mediante la cual confirmó una determinación previa de la Oficina de Política Contributiva y Legislativa de dicho departamento, cancelándole la concesión de un crédito contributivo para el año fiscal 2002-2003.
Con el beneficio de los alegatos de las partes de epígrafe, disponemos del recurso.
I
La recurrente es una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico que se dedica a la producción de plantas ornamentales y gallinas ponedoras. A tales efectos fue certificada por el Departamento de Agricultura como agricultor bonafi.de.
Esta corporación es una de naturaleza íntima, cuyos únicos accionistas son los esposos Mario E. Milanés e *1093 Ivelisse Mercado Pumarejo, a quienes en adelante nos referiremos como los “esposos Milanés.”
En noviembre del año 2001, el Departamento de Agricultura endosó y recomendó favorablemente una inversión de los esposos Milanés en la corporación recurrente montante a $300,000. Una vez materializada la inversión, se permitiría reclamar un crédito contributivo máximo de $150,000 en el año fiscal 2002-2003.
La inversión o aportación de los esposos Milanés, así como el crédito contributivo a concederse, se haría de conformidad con las disposiciones de la Ley Núm. 225 del 1 de diciembre de 1995, según enmendada, conocida como “Ley de Incentivos Contributivos Agrícolas de Puerto Rico”, 13 L.P.R.A. sec. 10401 et seq., en adelante “la LICA”.
Conforme a lo convenido con los esposos Milanés, para que la inversión tuviera el efecto de producir el crédito contributivo aludido, la cantidad de efectivo a aportarse por ellos debía ser utilizada por la corporación para la adquisición de equipo nuevo, maquinaria, riego y capital de trabajo. A cambio de dicha inversión, los esposos Milanés recibirían acciones de la recurrente.
Reclamado el crédito contributivo, el 31 de agosto de 2004, la Oficina de Política Contributiva y Legislativa del Departamento de Hacienda canceló la concesión del mismo, ya que una auditoría había demostrado que la obligación de repago del préstamo solicitado y obtenido por los esposos Milanés para hacer la inversión era responsabilidad de la corporación recurrente y no de ellos como inversionistas. También se determinó que el préstamo, aunque fue gestionado en el Banco Santander y garantizado personalmente por los esposos Milanés, estaba siendo repagado por la recurrente Finca Cojobas, Inc.; y que, además, nunca se había formalizado una obligación hipotecaria de los esposos Milanés para garantizar dicho préstamo, lo que no cumplía con la LICA.
Ante dicha decisión, el 30 de septiembre de 2004, la recurrente solicitó a la Secretaría de Procedimiento Adjudicativo del Departamento de Hacienda una vista administrativa, por estar en desacuerdo con la cancelación del crédito contributivo. La vista se celebró el 26 de enero de 2005 ante un Oficial Examinador.
Luego de los trámites de rigor, el 2 de noviembre de 2006 se emitió la resolución de la cual se recurre. De dicha resolución se desprende que los planteamientos de la recurrente para objetar la denegatoria del crédito contributivo en cuestión se concentraron en que:
“...[Djebido a la urgencia con que se realizó la transacción para poder hacer la aportación en el tiempo requerido, el préstamo fue garantizado de forma transitoria por Finca Cojobas, Inc., pero se estableció en el contrato de préstamo que dicho crédito ‘estará garantizado por un pagaré en segundo rando (sic) sobre una propiedad residencial ubicada en la calle Belice D-17, urbanización Altos de Torrimar en Bayamón, Puerto Rico’. El contrato establece que ‘dicho pagaré se estará constituyendo en un futuro cercano’. Debido al atraso en la certificación de los créditos, el Banco Santander de Puerto Rico debitó a la cuenta de Finca Cojobas, Inc. ciertas cantidades para abonar a la deuda de los esposos Milanés. Por esta misma razón, no se materializó la garantía hipotecaria que contemplaba el préstamo.” Véase Página 3 de la Resolución de 2 de noviembre de 2006.
En desacuerdo con la determinación administrativa según antes expuesta, es que la recurrente insta el recurso de revisión que ahora nos ocupa.
II
En su petición, la recurrente señala los siguientes errores en la resolución de la cual se recurre:

“1. Erró el Oficial Examinador al considerar al Querellante (Finca Cojobos, Inc.) como garantizador del préstamo que tomaron los esposos Milanés para realizar la inversión en el negocio agrícola.

*1094
2. Erró el Oficial Examinador al no considerar el carácter transitorio y condicional de la garantía de la Querellante (Finca Cojobos, Inc.) a la obligación incurrida por los esposos Milanés.

3. Erró el Oficial Examinador al interpretar que la concesión de un crédito por inversión en un negocio agrícola se debe interpretar como una gracia legislativa.

4. Erró el Oficial Examinador al darle más importancia a la forma que a la sustancia de la transacción, en contra del más básico principio de derecho contributivo de que la sustancia debe prevalecer sobre la forma.”

De los anteriores errores señalados se desprende que lo que nos corresponde resolver es si actuó correctamente la Oficina de Política Contributiva y Legislativa del Departamento de Hacienda, así como su Secretaría de Procedimiento Adjudicativo, al determinar que procedía la cancelación del crédito contributivo antes aludido.
En su petición para que revisemos el dictamen administrativo cuestionado, la recurrente plantea que la interpretación que hiciera el Departamento de Hacienda de la transacción de inversión efectuada entre la corporación y los esposos Milanés, es contraria a los propósitos de la LICA.
Por su parte, la Oficina de Política Contributiva y Legislativa, representada por el Procurador General, nos plantea que ninguna disposición de la LICA permite que la inversión de los esposos Milanés en la corporación recurrente se efectuara de la manera que se hizo. Sostiene el Procurador General que los esposos Milanés como accionistas de la corporación no podían “anteponer” el negocio agrícola de la corporación como colateral o garantía de su aportación a la misma; lo que no podían hacer siquiera en forma transitoria.
III
Veamos la normativa jurídica de aplicación a los incidentes y determinaciones administrativas que presenta este recurso.
A
Mediante la Ley Núm. 225 de 1 de diciembre de 1995, según enmendada, la antes citada LICA, estableció una clara política pública de conceder alta prioridad a la industria agrícola en Puerto Rico. Se proveyeron mecanismos para fortalecer la situación financiera de los agricultores y empresas agrícolas bonafi.de, con el objetivo de lograr un crecimiento sostenido del sector agrícola. 13 L.P.R.A. see. 10401.
Los Artículos 7 al 12 de la LICA, 13 L.P.R.A. sees. 10405-10409, establecen una serie de concesiones o beneficios económicos a los agricultores bona fide con el propósito de fortalecer y mantener una saludable condición financiera. A tales efectos se conceden exenciones en el pago de arbitrios, de contribuciones sobre la propiedad, de contribuciones sobre ingresos y, muy particularmente, se autorizan ciertos créditos contributivos por inversión en los negocios agrícolas.
En el Artículo 3(k)(l) de la LICA, 13 L.P.R.A. sec. 10402(k)(l), se definen y precisan las inversiones que serán elegibles para obtener las concesiones o beneficios contributivos que autoriza la ley, disponiendo que:

U

(k) Inversión elegible significa:

(l) La cantidad de efectivo que haya sido aportada para ser utilizada en un negocio agrícola a cambio de:

(A) Acciones en la corvoración, si el nesocio aerícola es una corporación, o

*1095
(B) la participación o el aumento en la participación, en una sociedad o empresa en común o negocio individual.

...” Subrayado nuestro.
De esta disposición estatutaria se desprende que para que la inversión sea elegible para recibir concesiones o beneficios contributivos tiene que ser en efectivo, para ser utilizada en la operación de una corporación dedicada al negocio agrícola, y a cambio de acciones de la corporación agrícola.
B
Reiteradamente, nuestro Tribunal Supremo ha indicado que cuando el texto de una ley es claro, debemos atenernos al mismo. Artículo 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14; Pueblo v. O'Neill, 165 D.P.R. _ (2005), 2005 J.T.S. 113; Alonso García v. S.L.G., 155 D.P.R. 91, 98 (2001); Morell et al. v. Ojeda, et al., 151 D.P.R. 864 (2000); Lasalle v. Junta Dir. ACAA, 140 D.P.R. 694 (1994).
De otro lado, cuando de interpretación de las leyes se trata, los tribunales tenemos la obligación de considerar cuáles fueron los propósitos sociales que motivaron a la Asamblea Legislativa a aprobarla. Matos v. Junta Examinadora, 165 D.P.R. _ (2005), 2005 J.T.S. 143; Depto. de la Familia v. Ramos, 158 D.P.R. _ (2003), 2003 J.T.S. 38; Piñero González v. A.A.A., 146 D.P.R. 890 (1998).
En resumen, es necesario que la interpretación de una ley sea armoniosa con todas sus disposiciones, a los fines de lograr que dicha interpretación sea una integrada, lógica, razonable y cónsona con la intención legislativa. Matos v. Junta Examinadora, supra. De ahí, que las distintas disposiciones que componen una ley no deben ser interpretadas de manera aislada, sino que deben ser analizadas en conjunto; sin perder de vista que el lenguaje claro de la ley es la mejor expresión de la intención legislativa. Id.; Depto. de Hacienda v. TLD, 164 D.P.R. _ (2005), 2005 J.T.S. 37.
En materia de derecho tributario o contributivo en particular, nuestro más Alto Foro ha reconocido que la fuente primaria del derecho contributivo es la ley que impone la contribución de que se trate; y cuando la propia letra de la ley contributiva cubre el asunto sin incertidumbre, ello dispone de la controversia. Sucn. Del Coro Lugo v. Srio. de Hacienda, 130 D.P.R. 1, 9-10 (1992).
C
Reiteradamente, nuestro más Alto Foro ha resuelto que las decisiones de los organismos administrativos merecen la mayor deferencia judicial. Esta deferencia se debe a que son éstos los que cuentan con el conocimiento experto y con la experiencia especializada de los asuntos que les son encomendados. Mun. de San Juan v. Plaza Las Américas, 169 D.P.R. _ (2006), 2006 J.T.S. 164; López v. Administración, 168 D.P.R. _ (2006), 2006 J.T.S. 146; Hernández v. Centro Unido, 168 D.P.R. _ (2006), 2006 J.T.S. 140; Comisionado de Seguros v. Puerto Rican Insurance Agency, 168 D.P.R. _ (2006), 2006 J.T.S. 142; Martínez v. Rosado, 165 D.P.R. _ (2005), 2005 J.T.S. 132; Polanco v. Cacique Motors, 165 D.P.R. _ (2005), 2005 J.T.S. 101; Otero v. Toyota, 163 D.P.R. _ (2005), 2005 J.T.S. 13; Rebollo Vda. de Liceaga v. Yiyi Motors, 161 D.P.R. _ (2004), 2004 J.T.S. 4; Pacheco Torres v. Estancias de Yauco, 160 D.P.R. _ (2003), 2003 J.T.S. 150.
Al momento de revisar una decisión administrativa el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. López v. Administración, supra; Camacho v. A.A.F.E.T., 168 D.P.R. _ (2006), 2006 J.T.S. 97; Rebollo Vda. de Liceaga v. Yiyi Motors, supra. Los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo, si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. López v. Administración, supra; Martínez v. Rosado, supra; Polanco v. Cacique Motors, supra; Otero v. Toyota, supra; Pacheco Torres v. Estancias de Yauco, supra; Domínguez Talavera v. Caguas Expressway Motors, Inc., 148 D.P.R. 387, 397 *1096 (1999).
Las determinaciones de hechos de organismos y agencias “tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas”. Camacho v. A.A.F.E.T., supra; Polanco v. Cacique Motors, supra; Otero v. Toyota, supra; Henríquez v. Consejo Educación Superior, 120 D.P.R. 194, 210 (1987); Facultad v. Consejo de Educación Superior, supra, pág. 532.
El tribunal podrá sustituir el criterio de la agencia por el propio, sólo cuando no pueda hallar una base racional para explicar la decisión administrativa. Otero v. Toyota, supra; Misión Ind. P.R. v. J.P., supra, pág. 134.
Ahora bien, en cuanto a la deferencia judicial antes aludida, la misma no debe concederse cuando el tribunal revisor se encuentra ante una interpretación estatutaria de la agencia administrativa que afecta derechos fundamentales, resulta irrazonable o conduce a la comisión de una injusticia. Martínez Segarra et al. v. Rosado Santoni, supra; Costa, Piovanetti v. Caguas Expressway, 149 D.P.R. 881 (1992). Es cuando la agencia interpreta el estatuto que viene obligada a poner en vigor de manera tal que produce resultados contrarios al propósito de la ley, que su errada interpretación no puede prevalecer y los tribunales vienen obligados a corregirla. Martínez Segarra et al. v. Rosado Santoni, supra; Mun. de San Juan v. J.C.A., 149 D.P.R. 263, 280 (1999).
IV
Contando con la normativa antes expuesta, procede que analicemos los planteamientos de las partes y determinemos si la Oficina de Política Contributiva y Legislativa del Departamento de Hacienda incidió o no al denegar el crédito contributivo reclamado por la corporación recurrente.
El crédito contributivo solicitado se fundamentó en las disposiciones de la LICA, particularmente en lo establecido en el Artículo 3(k)(l) de dicho estatuto, supra. Bajo esta disposición únicamente es elegible para el beneficio contributivo aquella inversión que se aporta en efectivo para ser utilizada por el negocio agrícola. A cambio de lo invertido, la corporación agrícola debe emitir a los inversores acciones de capital. Estos requisitos normativos son claros y no admiten interpretación. Véase Artículo 14 del Código Civil, supra; Pueblo v. O'Neill, supra; Alonso García v. S.L.G., supra; Morell et al. v. Ojeda, et al., supra; Lasalle v. Junta Dir. ACAA, supra. Además, tratándose de un estatuto contributivo impera la norma de hermenéutica de que cuando la propia letra de la ley cubre el asunto sin incertidumbre, no hay porqué hacer ejercicios interpretativos o de excepción. Véase Sucn. Del Coro Lugo v. Srio. de Hacienda, supra.
Somos de opinión que al aplicar las disposiciones de la LICA a la transacción financiera efectuada por los esposos Milanés con la corporación recurrente, la Oficina de Política Contributiva y Legislativa del Departamento de Hacienda lo hizo cumpliendo con las disposiciones claras del estatuto.
Las propias alegaciones de la recurrente confirman la corrección del dictamen administrativo. La recurrente admitió que el préstamo obtenido por los esposos Milanés fue garantizado por Finca Cojobas, Inc., aunque adujo que posteriormente la garantía sería sustituida por una de naturaleza hipotecaria sobre una propiedad de los esposos Milanés. Quedó establecido en la vista administrativa que dicha garantía hipotecaria no se materializó y que recayó la responsabilidad de pagar el préstamo en la propia corporación, quien lo ha estado pagando. Por tanto, el Departamento de Hacienda no tenía opción alguna que no fuera determinar lo que a fin de cuentas determinó su Oficina de Política Contributiva y Legislativa: denegar el crédito contributivo solicitado.
Como bien señala el Procurador General en su alegato “no bastan las buenas intenciones para lograr beneficios gubernamentales, sino que es imprescindible encaminar una gestión afirmativa y efectiva para poder allegar los incentivos económicos que las leyes contributivas proveen. ” Véase Alegato de la Parte Recurrida, pág. 11.
*1097 El examen y estudio que hemos hecho del expediente administrativo que las partes han sometido para nuestra consideración nos revela que la determinación recurrida fue una razonable. Véase López v. Administración, supra; Camacho v. A.A.F.E.T., supra; Rebollo Vda. de Liceaga v. Yiyi Motors, supra. Por tanto, no nos vemos compelidos a intervenir con la determinación administrativa aquí cuestionada, sobre todo cuando la misma está sostenida por la evidencia sustancial que obra en el expediente administrativo. Véase López v. Administración, supra; Martínez v. Rosado, supra; Polanco v. Cacique Motors, supra; Otero v. Toyota, supra; Pacheco Torres v. Estancias de Yauco, supra; Domínguez Talavera v. Caguas Expressway Motors, Inc., supra.
Tratándose de que las determinaciones de los organismos administrativos cuando se fundamentan en una base racional merecen la mayor deferencia judicial, es que procede la confirmación del dictamen recurrido. Véase Mun. de San Juan v. Plaza Las Américas, supra; López v. Administración, supra; Hernández v. Centro Unido, supra; Comisionado de Seguros v. Puerto Rican Insurance Agency, supra; Martínez v. Rosado, supra; Polanco v. Cacique Motors, supra; Otero v. Toyota, supra; Rebollo Vda. de Liceaga v. Yiyi Motors, supra; Pacheco Torres v. Estancias de Yauco, supra.
V
Por los fundamentos antes expuestos, se confirma la resolución de la Secretaría de Procedimiento Adjudicativo del Departamento de Hacienda de la cual se ha recurrido.
Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones